No. 13-11738

---

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

---

AIRTRAN AIRWAYS, INC.,

*Plaintiff-Appellee*,

v.

BRENDA ELEM, MARK D. LINK,
AND LINK & SMITH, P.C.,

*Defendants-Appellants*.

———————————

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:10-CV-3673-ODE

---

## PETITION FOR REHEARING EN BANC

---

Shaun P. Martin*
UNIVERSITY OF SAN DIEGO
SCHOOL OF LAW
5998 Alcalá Park
San Diego, CA 92110

Radha A. Pathak*
WHITTIER LAW SCHOOL
3333 Harbor Blvd.
Costa Mesa, CA 92626

* Not admitted in this Circuit.

Peter K. Stris
  *Counsel of Record*
Victor O'Connell
STRIS & MAHER LLP
19210 S. Vermont Ave., Bldg. E
Gardena, CA 90248
(424) 212-7090

Charles M. Cork, III
Ga. Bar No. 187915
P.O. Box 1041
Macon, GA 31202

*Counsel for Defendants-Appellants*

Case No. 13-11738
*AirTran Airways Inc. v. Brenda Elem*

## CERTIFICATE OF INTERESTED PERSONS

Pursuant to Eleventh Circuit Rule 26.1-1, counsel for Appellants Brenda Elem, Mark D. Link, and Link & Smith, P.C., Stris & Maher LLP, hereby certifies that the following is a complete list of persons and entities who have or may have an interest in the outcome of this case:

Aetna Life Insurance Co. (NYSE: ALIC), AirTran's claims administrator

AirTran Airways, Inc., Appellee

Bondurant, Elizabeth J., Counsel for Appellee

Cork III, Charles M., Counsel for Appellants

Elem, Brenda, Appellant

Evans, Orinda D., District Judge

Law Office of Charles M. Cork, III, Counsel for Appellants

Lewis, Brisbois, Bisgaard & Smith, LLP, Counsel for Appellants

Link, Mark D., Appellant

Link & Smith, P.C., Appellant

Pohlmann, Aaron E., Counsel for Appellee

Martin, Shaun P., Counsel for Appellants

O'Connell, Victor, Counsel for Appellants

Pathak, Radha A., Counsel for Appellants

C-1 of 2

Rawlings & Associates, PLLC, Counsel for The Rawlings Company, LLC

Rogers, Leron E., Counsel for Appellants

Sharman, Joelle C., Counsel for Appellants

Southwest Airlines Co. (NYSE: LUV), Indirect whole owner of Appellee

Stris, Peter K., Counsel for Appellants

Stris & Maher LLP, Counsel for Appellants

The Rawlings Company, LLC, Appellee's subrogation vendor

# STATEMENT OF COUNSEL

I express a belief, based on a reasoned and studied professional judgment, that the panel decision is in direct conflict with the following decisions of the Supreme Court of the United States or the precedents of this circuit and that consideration by the full court is necessary to secure and maintain uniformity of decisions in this court:

- *Mertens v. Hewitt*, 508 U.S. 248 (1993)
- *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002)
- *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006)
- *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013)
- *Popowski v. Parrott*, 461 F.3d 1367 (11th Cir. 2006)
- *Admin. Comm. For Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Horton*, 513 F.3d 1223 (11th Cir. 2008)

I also express a belief, based on a reasoned and studied professional judgment, that this appeal involves a question of exceptional importance:

1. Does section 502(a)(3)(B) of the Employee Retirement and Income Security Act of 1974, 29 U.S.C. § 1132(a)(3)(B), permit a fiduciary to enforce an equitable lien against a defendant without showing that the funds on which the lien was placed are currently in the defendant's possession?

Peter K. Stris
*Counsel of Record*

i

# TABLE OF CONTENTS

Certificate of Interested Persons ..............................................................C-1

Statement of Counsel ..............................................................................i

Table of Contents ................................................................................. ii

Table of Citations ................................................................................ iii

Introduction and Statement of the Issue .....................................................1

Statement of the Case...............................................................................2

Argument and Authorities ........................................................................8

I.    The Question Presented Is One of Exceptional National Importance.............9

II.   The Panel Majority's Holding Conflicts with Decisions of the
      United States Supreme Court and This Circuit .............................................11

Conclusion ...........................................................................................16

Certificate of Service ............................................................................17

# TABLE OF CITATIONS

## CASES

\* *Admin. Comm. For Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Horton*,
513 F.3d 1223 (11th Cir. 2008) ....................................................2, 15

\* *Bilyeu v. Morgan Stanley Long Term Disability Plan*,
683 F.3d 1083 (9th Cir. 2012)...............................................................7

*CIGNA Corp. v. Amara*,
131 S. Ct. 1866 (2011) ......................................................................3, 4

*Cusson v. Liberty Life Assurance Co.*,
592 F.3d 215 (1st Cir. 2010) .................................................................7

*Funk v. CIGNA Grp. Ins.*,
648 F.3d 182 (3d Cir. 2011) ..................................................................7

*Gutta v. Standard Select Trust Ins. Plans*,
530 F.3d 614 (7th Cir. 2008) .................................................................7

\* *Great-West Life & Annuity Ins. Co. v. Knudson*,
534 U.S. 204 (2002)........................................................................4, 12

*Kenny A. v. Perdue*,
547 F.3d 1319 (11th Cir. 2008) ............................................................9

*Longaberger Co. v. Kolt*,
586 F.3d 459 (6th Cir. 2009)................................................................7

\* *Popowski v. Parrott*,
461 F.3d 1367 (11th Cir. 2006) ....................................................2, 15

\* *Mertens v. Hewitt*,
508 U.S. 248 (1993)......................................................................3, 11

\* *Sereboff v. Mid Atl. Med. Servs., Inc.*,
547 U.S. 356 (2006)..................................................3, 4, 11, 12, 13

iii

*Thurber v. Aetna Life Ins. Co.*,
    134 S. Ct. 381 (2013) ........................................................................7

*Thurber v. Aetna Life Ins. Co.*,
    712 F.3d 654 (2d Cir. 2013) ...........................................................7

\* *Treasurer, Trustees of Drury Indus., Inc. Health Care Plan & Trust*
    *v. Goding*,
    692 F.3d 888 (8th Cir. 2012) ..........................................................7

\* *US Airways, Inc. v. McCutchen*,
    133 S. Ct. 1537 (2013) ...............................................................3, 13

### STATUTES

29 U.S.C. § 1132(a) ...............................................................................2

\* 29 U.S.C. § 1132(a)(3)(B) ...........................................................*passim*

42 U.S.C. § 407(a) .................................................................................5

### RULES

Fed. R. Civ. P. 35(b)(1)(B) ....................................................................9

Circuit Rule 35-3 ................................................................................2, 8

### OTHER AUTHORITIES

Brendan S. Maher & Radha A. Pathak,
    *Understanding and Problematizing Contractual Tort Subrogation*,
    40 LOY. U. CHI. L.J. 49 (2008) ..........................................................6

Brief for the American Council of Life Insurers, America's Health
    Insurance Plans, and the American Benefits Council as Amicus
    Curiae in support of Petition for Writ of Certiorari, *First Unum Life
    Ins. Co. v. Bilyeu*, No. 12-526 (November 28, 2012), *available at*
    http://sblog.s3.amazonaws.com/wp-content/uploads/2012/12/12-52
    6-acACLI-Amicus.pdf ......................................................................10

Brief for Petitioners, *Sereboff v. Mid Atl. Med. Servs., Inc.*,
    No. 06-260 (Jan. 19, 2006) .............................................................12

iv

\* Brief for the United States as Amicus Curiae, *Thurber v. Aetna Life Ins. Co., et al.*, No. 13-130, 2014 WL 1783200 (May 2014) .......................................................2, 7, 8, 11, 15

Council for Disability Awareness, 2014 Long Term Disability Claims Review (2014), *available at* http://www.disabilitycanhappen.org/research/CDA_LTD_Claims_Survey_2014.pdf........................................................................10

Petition for a Writ of Certiorari, *First Unum Life Ins. Co. v. Bilyeu*, No 12-526 (October 2012)...................................................................7

Petition for a Writ of Certiorari, *Thurber v. Aetna Life Ins. Co.*, No. 13-130 (July 2013).....................................................................7

Restatement of Restitution and Unjust Enrichment § 215 (1936)..........................14

Restatement of Restitution and Unjust Enrichment § 161 (1936)..........................14

Roy F. Harmon III, *The Conflict Between ERISA Overpayment Claims and Statutory Protection of SSDI Benefits* (Dec. 22, 2008), http://www.healthplanlaw.com/?p=1017 .......................................................9, 10

Vanessa Fuhrmans, *Accident Victims Face Grab for Legal Winnings*, Wall St. J., Nov. 7, 2007, http://online.wsj.com/news/articles/SB119551952474798582 ............................6

## INTRODUCTION AND STATEMENT OF THE ISSUE

This is an extraordinary case. It involves an important question of statutory interpretation that has deeply and intractably divided the circuits: does section 502(a)(3)(B) of the Employee Retirement and Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(3)(B), permit a fiduciary to enforce an equitable lien against a defendant without showing that the funds on which the lien was placed are currently in the defendant's possession? Adopting the position of the First, Second, Third, Sixth, and Seventh Circuits, the panel majority answered yes. As explained by Judge Martin in her dissent, however, that position has been correctly rejected by the Eighth and Ninth Circuits and recently discredited by the United States – whose agencies are charged with the administration of ERISA.

Rehearing is warranted for at least two reasons. First, the question decided by the panel is undeniably one of exceptional national importance. Unless and until the United States Supreme Court intervenes, this Court's resolution of that question will dramatically affect the rights of countless recipients of disability, medical, and pension benefits in Alabama, Florida, and Georgia. A question with such far-reaching consequences should not be resolved by a divided three judge panel. It should be decided by this Court en banc with the benefit of input from *amici* representing a diverse group of stakeholders.

1

Second, the panel majority's interpretation of ERISA is "in direct conflict with precedent of the Supreme Court [and] of this circuit." Circuit Rule 35-3. As explained by the United States, the panel majority's holding attempts to justify its direct contravention of an unbroken line of Supreme Court cases, see Brief for the United States as Amicus Curiae at 9–14, *Thurber v. Aetna Life Ins. Co., et al.*, No. 13-130, 2014 WL 1783200 (May 2014) (U.S. Br.), by advancing a fundamental misinterpretation of one, *see* U.S. Br. at 14–15.[1]

## STATEMENT OF THE CASE

1. ERISA is a landmark piece of legislation designed "to promote the interests of employees and their beneficiaries in employee benefit plans." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113 (1989) (citations omitted). It was drafted broadly to include pension plans, see 29 U.S.C. § 1002(2), and welfare plans, see 29 U.S.C. § 1002(1). And today, ERISA welfare plans are the primary source of health, life, and disability insurance for millions of Americans.

Section 502(a) of ERISA sets forth the exclusive remedies that are available to a civil litigant under the statute. 29 U.S.C. § 1132(a). The most controversial part of ERISA's remedies provisions is section 502(a)(3)(B), which authorizes a civil

---

[1] As explained by Judge Martin, the panel majority's holding is also difficult – if not impossible – to reconcile with *Popowski v. Parrott*, 461 F.3d 1367 (11th Cir. 2006) (*Popowski*) and *Admin. Comm. For Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Horton*, 513 F.3d 1223 (11th Cir. 2008) (*Horton*). *See* Panel Op. at 27 (Martin, J., dissenting) (discussing *Popowski*), 32 (discussing *Horton*).

action for "appropriate equitable relief." 29 U.S.C. § 1132(a)(3)(B). It has already resulted in *five* decisions by the United States Supreme Court. *See Mertens v. Hewitt*, 508 U.S. 248 (1993) (*Mertens*); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) (*Knudson*); *Sereboff v. Mid Atl. Med. Servs., Inc.*, 547 U.S. 356 (2006) (*Sereboff*); *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011) (*Amara*); *US Airways, Inc. v. McCutchen*, 133 S. Ct. 1537 (2013) (*McCutchen*).[2]

2. In 1993, the Supreme Court decided *Mertens* – a case brought by an ERISA participant against a non-fiduciary. *Mertens*, 508 U.S. at 250–51. The Court interpreted the phrase "appropriate equitable relief" narrowly, limiting its reach to only "those categories of relief that were *typically* available in equity." *Id.* at 256 (emphasis in original). Nearly a decade later, the Court decided *Knudson* – a case brought by a fiduciary against a participant. The Court reaffirmed the holding of *Mertens* and clarified that – in assessing whether relief was "typically available in equity" – a court must determine whether, "[i]n the days of the divided bench," equity courts would have provided the remedy sought. *Knudson*, 534 U.S. at 212.

---

[2] The meaning of the phrase "appropriate equitable relief" is not only controversial, but also of unique importance. Section 502(a)(3) is the only provision in ERISA that permits a fiduciary to seek monetary relief from a participant who has violated the terms of her ERISA plan. And it is the only provision in ERISA that permits a participant or beneficiary to seek individualized monetary relief to remedy a statutory violation. *See generally* Victor O'Connell & Peter K. Stris, *ERISA & Equity*, 29 ABA J. LAB. & EMP. L. 125 (2013).

3

In *Knudson*, the answer was no because the fiduciary did not seek "to restore . . . particular funds or property in the [defendants'] possession." *Id.* at 214.

Four years later, the Court decided *Sereboff*, a case involving the same factual scenario as *Knudson* but with one critical difference: the particular funds sought by the fiduciary *were* in the defendants' possession. *Sereboff*, 547 U.S. at 360. The Court held that equity provided a remedy in the form of an equitable lien by agreement. *Id.* at 363. Five years later, the Court decided *Amara* – a case brought by ERISA participants against a fiduciary. *Amara*, 131 S. Ct. at 1870. The Court held that, because the defendant was a fiduciary, the plaintiffs could pursue certain remedies that were typically available in pre-merger equity courts – specifically, surcharge, reformation, and estoppel. *Id.* at 1879–1880. And most recently, the Court decided *McCutchen*. Like *Knudson* and *Sereboff*, that case involved a fiduciary who sued a participant. *McCutchen*, 133 S. Ct. at 1543. The participant argued that the fiduciary's claim for reimbursement was subject to specific equitable defenses. *Id.* at 1544. The Court largely disagreed, holding that those defenses could not override contrary plan terms. *Id.* at 1546.

3.  In the wake of these five cases, litigation pursuant to section 502(a)(3)(B) of ERISA has focused on the historical conditions that pre-merger equity courts would require for particular forms of relief. In the context of fiduciaries suing participants, litigation in a wide range of cases now turns almost entirely on one

4

critical question: may an ERISA fiduciary enforce an equitable lien against a defendant without showing that the funds on which the lien was placed are in her possession?  That question is exceptionally important and arises frequently in various types of ERISA cases, including the following common examples:

*Disability "Overpayment" Cases.* ERISA plans often wish to require disability benefits to be repaid if a beneficiary receives Social Security Disability Income ("SSDI").  But section 407(a) of the Social Security Act shields SSDI benefits from attachment.  42 U.S.C. § 407(a).  To avoid running afoul of that prohibition, most ERISA plans are written to deem disability benefits as "overpayments" subject to recoupment if SSDI is received.  Under these plans, when a plan participant becomes disabled, is paid benefits, and – months or years later – receives SSDI, the plan seeks recoupment for its "overpaid" disability benefits, which by that time have been entirely spent on living expenses.  Thus the question arises: can an equitable lien be enforced without showing that the funds on which the lien was placed are currently in the defendant's possession?

*Healthcare "Reimbursement" Cases.*  ERISA plans often pay the medical expenses of plan participants or beneficiaries who are injured in an accident.  Most plans contain terms requiring those benefits to be repaid if the recipient later obtains a tort settlement or judgment from a responsible third party.  Many plans expressly disclaim application of the common fund doctrine (*i.e.*, the plan will free-ride on the

5

work of the participant's personal injury attorney) and authorize first-dollar recovery (*i.e.*, the plan will be reimbursed 100% even if the injured participant will receive nothing).[3]  When there is a dispute over the existence or amount of the plan's lien, a fiduciary must act promptly to protect its interest.  Otherwise, some or all of the disputed monies may be spent in good faith before resolution of the parties' dispute.  Thus, again, the question arises: can an equitable lien be enforced without showing that the funds on which the lien was placed are currently in the defendant's possession?[4]

4.  Prior to this case, five circuits had held that an ERISA fiduciary may enforce an equitable lien against a defendant without showing that the funds on which lien was placed are currently in the defendant's possession. Two circuits

---

[3] It is widely accepted that such reimbursement provisions can be terribly unfair.  *See, e.g.*, Vanessa Fuhrmans, *Accident Victims Face Grab for Legal Winnings*, WALL ST. J., Nov. 7, 2007, http://online.wsj.com/news/articles/SB119 551952474798582.  As such, they are unenforceable under the law of most states. *See generally* Brendan S. Maher & Radha A. Pathak, *Understanding and Problematizing Contractual Tort Subrogation*, 40 LOY. U. CHI. L.J. 49 (2008). Because of those facts, genuine disputes often arise over the extent to which a lien asserted pursuant to such a provision is applicable or enforceable in a given case.

[4] A third common fact pattern arises in health care and pension cases:  Years after health or pension benefits are paid, a plan discovers that the benefit payments were too high as a result of a miscalculation by the plan.  The plan's terms authorize recoupment.  As one can imagine, the result of seeking such recoupment can be extremely harsh for individuals who have exhausted the funds that they honestly believed they were entitled to spend on health or living expenses.  Once again, the question presented, and serious public policy concerns, are implicated.

squarely disagreed.  *Compare Cusson v. Liberty Life Assurance Co.*, 592 F.3d 215 (1st Cir. 2010) (plan may collect from defendant even though the fund was no longer in the defendant's possession or control), *and Thurber v. Aetna Life Ins. Co.*, 712 F.3d 654 (2d Cir. 2013) (same), *and Funk v. CIGNA Grp. Ins.*, 648 F.3d 182 (3d Cir. 2011) (same), *and Longaberger Co. v. Kolt*, 586 F.3d 459 (6th Cir. 2009) (same), *and Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614 (7th Cir. 2008) (same), *with Treasurer, Trustees of Drury Indus., Inc. Health Care Plan & Trust v. Goding*, 692 F.3d 888 (8th Cir. 2012) (when the defendant is no longer in possession of a fund, a Plan cannot recover on an equitable lien), *and Bilyeu v. Morgan Stanley Long Term Disability Plan,* 683 F.3d 1083 (9th Cir. 2012) (same).[5]

Advocates on both sides have implored the Supreme Court to intervene.  *See, e.g.*, Petition for a Writ of Certiorari, *First Unum Life Ins. Co. v. Bilyeu*, No 12-526 (October 2012) (filed by plan fiduciary); Petition for a Writ of Certiorari, *Thurber v. Aetna Life Ins. Co.*, No. 13-130 (July 2013) (filed by plan participant).  Last year, the Court called for the views of the Solicitor General on the question.  *Thurber v. Aetna Life Ins. Co.*, 134 S. Ct. 381 (2013).  In its invitation brief, the government acknowledged the existence of a then five-to-two circuit split.  U.S. Br. at 6–9.  It proceeded to explain in detail why the position of the *majority is wrong* because it

---

[5] Five of these are disability "overpayment" cases: *Cusson*, *Thurber*, *Funk, Gutta*, and *Bilyeu*.  Two are healthcare "reimbursement" cases: *Longaberger* and *Goding*.

directly contravenes *Knudson*, see U.S. Br. at 9–14, based on a fundamental misinterpretation of *Sereboff*, see U.S. Br. at 14–15.  The government recommended denial, however, on vehicle grounds.  *See* U.S. Br. at 15–20.  The petition was subsequently denied.

5.   In this case, the panel majority adopted the majority position in the circuit split, Panel Op. at 11, over a lengthy and thoughtful dissent by Judge Martin explaining the position of the United States.  Panel Op. at 25–29 (Martin, J., dissenting) (Section I.A).  Amazingly, the panel majority failed to acknowledge – let alone refute – the reasoned and contrary position of the government, one that casts serious doubt on the continued validity of previously decided cases in the circuit split majority.  The only apparent reason for this failure was the seeming desire to punish the perceived "sin[s]" of the participant and her lawyer in this particular case. Panel Op. at 2 (citing Numbers 32:23).  The panel majority failed to appreciate, however, that such punishment will be imposed on countless innocent parties who will be bound by the panel's holding.

## ARGUMENT AND AUTHORITIES

This case readily satisfies the established criteria for rehearing en banc set forth in Fed. R. App. P. 35 and Circuit Rule 35-3 because it concerns a question of exceptional importance that the panel majority resolved "in direct conflict with precedent of the Supreme Court [and] of this circuit."  Circuit Rule 35-3.

8

**I.     The Question Presented Is One of Exceptional National Importance.**

The question presented is frequently litigated throughout the nation.  Indeed, the question is so important that it has caused a circuit conflict involving eight of the thirteen courts of appeals.  *See supra* pages 6–7 (citing cases).  That alone warrants en banc review.  *See, e.g*, Fed. R. Civ. P. 35(b)(1)(B) ("a proceeding presents a question of exceptional importance if it involves an issue on which the panel decision conflicts with the authoritative decisions of other United States Courts of Appeals that have addressed the issue.").  *Cf. Kenny A. v. Perdue*, 547 F.3d 1319, 1321 (11th Cir. 2008) (Wilson, J., concurring in the denial of rehearing en banc because "[i]mportantly, there is no circuit split on this issue.").

Moreover, this circuit split involves a question of exceptional importance.  Put simply, the divided panel's resolution of the question presented will dramatically affect the rights of disability, medical, and pension benefit recipients in Alabama, Florida, and Georgia.  To understand the high stakes involved, one need look no further than the disability "overpayment" cases described above:

Advocates for the disabled argue that the imposition of an equitable lien when disability insurance payments have already been spent on ordinary living expenses is nothing more than an unlawful attempt to use ERISA as an end-run around section 407(a) of the Social Security Act which shields SSDI benefits from attachment.  42 U.S.C. § 407(a).  *See also* Roy F. Harmon III, *The Conflict Between ERISA*

9

*Overpayment Claims and Statutory Protection of SSDI Benefits* (Dec. 22, 2008), http://www.healthplanlaw.com/?p=1017.

On the other hand, leading insurance industry trade groups argue that the refusal to permit such equitable liens would threaten the continued viability of a functioning and affordable private-sector disability insurance market. *See* Brief for the American Council of Life Insurers, America's Health Insurance Plans, and the American Benefits Council as Amicus Curiae in support of Petition for Writ of Certiorari, *First Unum Life Ins. Co. v. Bilyeu*, No. 12-526 (November 28, 2012), *available at* http://sblog.s3.amazonaws.com/wp-content/uploads/2012/12/12-526-acACLI-Amicus.pdf (arguing that "the question presented is one of pressing nationwide importance" and that the position of the United States "threatens immediate, significant consequences for employee benefit plans nationwide, particularly those providing employees with disability income insurance.").

Given the widespread agreement regarding what is at stake in the disability insurance context, the question presented all but requires en banc review.[6] If the petition is granted, the question can be decided by the full Court with the benefit of

---

[6] As evidenced by the circuit split cases, the question presented arises most frequently in that context. That is not surprising. Approximately 32 million Americans participate in ERISA plans that provide long-term disability benefits. *See* Council for Disability Awareness, 2014 Long Term Disability Claims Review at 1 (2014), *available at* http://www.disabilitycanhappen.org/research/CDA_LTD_Claims_Survey_2014.pdf. And last year alone, 653,000 beneficiaries received more than $9.8 *billion* in replacement income. *Id*. at 3.

input from *amici* who represent both disability insureds and insurers. If the petition is denied, however, the law of this circuit on an issue of striking importance to disability insurance will have been settled without the participation of anyone who purports to represent the interest of relevant stakeholders.

## II.    The Panel Majority's Holding Conflicts with Decisions of the United States Supreme Court and This Circuit.

As explained by Judge Martin, the panel majority's decision squarely conflicts with an entire line of Supreme Court cases, see Panel Op. at 25–29 (Martin, J., dissenting) (Section I.A.), and is based on a fundamental misreading of *Sereboff*, 547 U.S. 356 (2006), see Panel Op. at 30–33 (Section I.C.). The United States agrees. *See* U.S. Br. at 9–14 (explaining why the panel majority's holding is wrong and conflicts with a line of Supreme Court ERISA cases); 14–15 (explaining the panel majority's misreading of *Sereboff*).

In 1993, the Supreme Court first interpreted the meaning of "appropriate equitable relief" in 29 U.S.C. § 1132(a)(3)(B). In a 5-4 decision, it held that Congress intended the phrase to refer only to "those categories of relief that were *typically* available in equity." *Mertens*, 508 U.S. at 256. Since *Mertens*, the Supreme Court has thrice considered the availability of "appropriate equitable relief" in cases where a fiduciary has sought "reimbursement" from a participant.

In *Knudson* (2002), an ERISA fiduciary whose plan had paid the medical bills of an injured participant sought "reimbursement" from that participant after she

11

reached a monetary settlement with a tortfeasor who had caused her injuries. *Knudson*, 534 U.S. at 207. The proceeds of the participant's settlement had been deposited directly into a special needs trust, which was not made a party to the litigation. *Id.* at 208. For that reason, the *Knudson* Court held that the fiduciary had no recourse against the participant personally. *Id.* at 210.

Four years later, the Court decided *Sereboff* (2006), a case involving the same factual scenario as *Knudson* but with one fundamental difference: the funds sought by the fiduciary were paid to the defendants and segregated by agreement of the parties pending the resolution of litigation. *Sereboff*, 547 U.S. at 360. The defendants argued that the "reimbursement" sought by the fiduciary was neither available as a restitutionary equitable lien (because the segregated settlement funds could not be traced back to the monies paid by the plan to cover the participant's medical bills), Brief for Petitioners at 17–23, *Sereboff v. Mid Atl. Med. Servs., Inc.*, No. 06-260 (Jan. 19, 2006), nor as an equitable lien by agreement (because such a contractual remedy was not typically available in pre-merger courts of equity), *id.* at 24–27. The Supreme Court disagreed. It held that an equitable lien by agreement *was* typically available as a remedy in pre-merger courts of equity. *Id.* at 368. And, as such, there was no requirement that the fiduciary trace the settlement fund back to the monies paid by the plan to cover the participant's medical bills. *Id.* at 365.

12

The *Sereboff* Court did not overrule the core teaching of *Knudson*. Indeed, because the settlement funds in *Sereboff* were being held in escrow pending resolution of the litigation, the Court expressly noted that the "impediment to characterizing the relief in [*Knudson*] as equitable [was] not present [because the plaintiff] sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the [defendants'] assets generally, as would be the case with a contract action at law." *Id.* at 362–63.

In *McCutchen* (2013), the Supreme Court – for a third time – evaluated the viability of a claim by an ERISA fiduciary whose plan had paid the medical bills of an injured participant that sought "reimbursement" from that participant after she reached a monetary settlement with a tortfeasor. *McCutchen*, 133 S. Ct. at 1543. As in *Sereboff* (and unlike in *Knudson*), the funds on which the fiduciary wished to place an equitable lien were indisputably in the possession of the defendants. *Id.* The defendants pressed an argument left open by the *Sereboff* Court – that the relief sought by the fiduciary was not "appropriate" because it contravened equitable common fund and make whole doctrines. *Id.* at 1545. The Supreme Court held that the default equitable defenses relied on by defendants will not apply under ERISA if they are disclaimed by the relevant plan documents. *Id.* at 1546. But, like the *Sereboff* Court, the *McCutchen* Court did not purport to overrule the core teaching of *Knudson*. To the contrary, it emphasized that the fiduciary in *McCutchen* – like

13

the fiduciary in *Sereboff* – sought "equitable relief" because it claimed "'specifically identifiable funds' *within the [defendants'] control. . . .*" *Id.* at 1545 (emphasis added).

Given this line of cases, Judge Martin was correct in her assessment that "Supreme Court precedent makes clear that a plaintiff proceeding in equity to recover funds from a defendant must, at a minimum, show that those funds are presently in the defendant's possession." Panel Op. 25 (Martin, J., dissenting). The contrary holding of the panel majority directly conflicts with the core teaching of *Knudson*: that "where 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust or an equitable lien upon other property of the [defendant].'" *Knudson*, 534 U.S. at 213–214 (quoting Restatement of Restitution and Unjust Enrichment § 215, cmt. a, at 867 (1936) (brackets in original) (Restatement).[7]

The contrary position of the panel majority was discussed at length by the United States in a recent *amicus* brief cited by Judge Martin. Panel Op. at 28–29

---

[7] It also cannot be reconciled with the black-letter principles that the Supreme Court has held *must* undergird claims for appropriate equitable relief. *See, e.g.*, Restatement § 161, cmt. e (an "equitable lien [could] be established and enforced only if there [was] some property which [was] subject to the lien" and where "the property subject to the equitable lien can no longer be traced, the equitable lien cannot be enforced.").

(Martin, J., dissenting).  In that brief, the United States clearly explains why the position adopted by the panel majority is wrong and conflicts with the relevant line of Supreme Court cases.  *See* U.S. Br. at 9-14.  And the United States goes on to explain why the position adopted by the panel majority is based on a fundamental misreading of *Sereboff*.  *See id*. at 14–15.  *See also* Panel Op. at 33 (Martin, J., dissenting) (explaining that "[t]he majority relies on what I believe is a misapplication of *Sereboff* accepted by some of our sister circuits . . . .").

The panel majority fails to mention (let alone address) the position of the United States – whose agencies are charged with the administration of ERISA and whose opinion was expressly invited by the Supreme Court on this particular question.  Instead, it merely concludes that "[w]e disagree with our dissenting colleague, who adopts the position of the Ninth Circuit" and then quickly rehashes – largely through quotations – the discredited position of its sister circuits.[8]

---

[8] Judge Martin was also correct in suggesting that the panel majority's decision conflicts with the prior precedent of this Court in *Popowski* and *Horton*. *See* Panel Op. at 27 (Martin, J., dissenting) (discussing *Popowski*), 32 (discussing *Horton*).  For that reason as well, en banc review is warranted.

## CONCLUSION

This Court should vacate the panel's decision and rehear the case en banc.

Respectfully submitted,

/s/ Peter K. Stris
Peter K. Stris
Victor O'Connell
STRIS & MAHER LLP
19210 S. Vermont Ave., Bldg. E
Gardena, CA 90248
(424) 212-7090

Charles M. Cork, III
Ga. Bar No. 187915
P.O. Box 1041
Macon, GA 31202

October 13, 2014                 *Counsel for Defendants-Appellants*

**CERTIFICATE OF SERVICE**

I certify that on October 13, 2014, I filed the foregoing Petition for Rehearing

En Banc by causing a copy to be electronically uploaded to the Court's ECF system

and by causing paper copies to be delivered to the Court by UPS Overnight Delivery.

I certify that on October 13, 2014, a true and correct copy of this brief was served,

via UPS Ground, postage prepaid, upon the following individuals:

Elizabeth J. Bondurant
Aaron Edward Pohlmann
Dorothy Hubbard Cornwell
SMITH MOORE LEATHERWOOD LLP
1180 W. Peachtree St. NW
Suite 2300
Atlanta, GA 30309

*Counsel for Plaintiff-Appellee*

/s/ Peter K. Stris
Peter K. Stris
STRIS & MAHER LLP
19210 S. Vermont Ave., Bldg. E
Gardena, CA 90248
(424) 212-7090

*Counsel for Defendants-Appellants*

17

**ADDENDUM**
*AirTran Airways, Inc. v. Elem*,
No. 13-11738, 2014 WL 4694776
(11th Cir. Sept. 23, 2014)

[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

Nos. 13-11738 & 13-14912
_____

D.C. Docket No. 1:10-cv-03673-ODE

AIRTRAN AIRWAYS, INC.,

Plaintiff-Appellee,

versus

BRENDA ELEM,
MARK D. LINK, and
LINK & SMITH, P.C.,

Defendants-Appellants.
_____

Appeals from the United States District Court
for the Northern District of Georgia
_____

(September 23, 2014)

Before WILLIAM PRYOR and MARTIN, Circuit Judges, and HONEYWELL,[*]
District Judge.

PRYOR, Circuit Judge:

    This appeal requires us to decide whether an employee welfare benefit plan

_____

[*] Honorable Charlene Edwards Honeywell, United States District Judge for the Middle District
of Florida, sitting by designation.

may recover medical costs it spent on behalf of a beneficiary after she and her attorney conspired to hide and disburse settlement funds she received after a car accident. Brenda Elem participated, as an employee of AirTran, in a self-funded employee welfare benefit plan. After Elem suffered injuries in a car accident and the plan paid over $100,000 for her medical care, Elem sued the other driver and settled for $500,000. AirTran sought reimbursement from Elem, but Elem's attorney, Mark Link, misrepresented that Elem had settled for only $25,000. Link's sin then found him out, *see* Numbers 32:23, when he accidentally sent the plan a copy of a settlement check for $475,000. After AirTran sued Elem, Link, and Link & Smith, P.C., for violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(3), the district court granted summary judgment and awarded attorney's fees and costs in favor of AirTran.

Elem, Link, and the law firm challenge three orders. They contest the summary judgment on the ground that AirTran failed to satisfy the strict tracing rules of equitable restitution, but these rules do not apply to the equitable lien by agreement that the AirTran plan created. *See Sereboff v. Mid Atlantic Med. Serv., Inc.*, 547 U.S. 356, 364–65, 126 S. Ct. 1869, 1875 (2006). Elem and Link argue that the district court abused its discretion when it awarded AirTran attorney's fees and costs, but the district court had the authority to sanction them for their bad

2

faith. Elem and Link also complain that the district court misapplied Federal Rule of Civil Procedure 70 when the court ordered enforcement of the judgment, but that issue became moot when Link and his law firm complied with the order. We affirm the summary judgment and award of fees and costs and dismiss as moot the appeal of the order to enforce the judgment.

## I. BACKGROUND

In 2007, Brenda Elem sustained injuries in a car accident. Her employer, AirTran, paid $131,704.28 for her medical care as a result of her participation in its self-funded employee welfare benefit plan. The plan designated Elem as a constructive trustee over any payments recovered from third parties and created an equitable lien for the amount of benefits paid by the plan. Under the plan, when Elem accepted her medical benefits from AirTran, she acknowledged that AirTran had a first priority claim to all payments made by a third party, even if that third party failed to pay the full amount of her damages. Months after the accident, the plan administrator advised Elem that, if she sued the driver of the other vehicle, Migel Rizo, the terms of the plan required Elem to reimburse AirTran with proceeds from that suit. And the plan administrator also advised Rizo's insurer, AIG, of that right to reimbursement.

In September 2007, when Elem contacted AIG to settle the claim against Rizo within his liability policy limits of $25,000, she misrepresented that the plan would have no lien against any funds she would recover from AIG. She also stated that she intended to sue Rizo for the full amount of her damages if AIG refused to pay the $25,000. AIG responded that Rizo's policy limit was $25,000 and that it would be willing to issue a settlement check for that amount to Elem if her plan "waive[d] their subrogation lien" or to Elem and the plan if the plan did not waive the lien.

Elem hired Mark Link of Link & Smith, P.C., as her attorney and sued Rizo for the injuries she sustained in the accident. AIG advised Link that it had offered $25,000 to Elem, but that AIG had notice of a lien and a duty to protect its insured. In December 2007, the plan administrator for AirTran notified Link of the lien in favor of AirTran.

Rizo and Elem later settled their lawsuit for $500,000. During the negotiation of their settlement agreement, Link asked AIG to prepare two releases: one reflecting payment of the policy limit of $25,000 and another for $475,000 in settlement of Rizo's claim of bad faith. Link also requested two separate checks and demanded that the $25,000 release not mention Rizo's release of his claim of

bad faith. AIG responded that "it seems deceptive" to omit Rizo's release of his claim, but Link got his way.

Elem executed a release in favor of AIG for $25,000 and another release for $475,000 signed also by Rizo. AIG issued two separate settlement checks to Elem, Link, and Link & Smith, one for $25,000 and another for $475,000. Elem later received $274,184.08; Link & Smith retained $190,000.00 for attorney's fees and $10,815.92 for expenses; and Link & Smith kept the remaining funds of $4,500.00 in an escrow account.

When Link informed the plan administrator about the settlement, he stated that Elem had settled her claim against Rizo for the policy limit of $25,000 and "has abandoned any hope of recovering" more than that amount. Although Link intended to enclose a copy of the $25,000 check as proof of that settlement, he inadvertently enclosed a copy of the $475,000 check. The plan administrator noticed the error and demanded reimbursement from "[a]ll [s]ettlements and [j]udgments."

When Elem refused to reimburse the plan, AirTran filed suit against Elem, Link, and Link & Smith. The parties filed cross motions for summary judgment, and the district court granted summary judgment in favor of AirTran. The court

then awarded AirTran attorney's fees in the amount of $145,723.28 and costs in the amount of $3,692.52.

When Link still refused to pay, AirTran filed a motion to enforce the judgment under Federal Rule of Civil Procedure 70. Elem and Link responded that Rule 70 was inapplicable because the judgment against them was for money damages enforceable only through a writ of execution. The district court granted the motion and ordered Elem and Link to satisfy the full amount of the judgment or post a bond. AirTran later moved to hold Elem and Link in contempt when they refused to comply with the order, but AirTran withdrew the motion when Link and Link & Smith eventually paid the full amount of the judgment and attorney's fees and costs. At oral argument, the parties stipulated that Link and his firm conditioned this payment on the disposition of the appeal of the summary judgment and the award of attorney's fees and costs.

## II. STANDARDS OF REVIEW

Two standards of review govern us. First, we review *de novo* a summary judgment and draw all inferences and review all evidence in the light most favorable to the nonmoving party. *Hamilton v. Southland Christian Sch., Inc.,* 680 F.3d 1316, 1318 (11th Cir. 2012). Summary judgment should be granted only when the movant establishes that there is no genuine issue of material fact and that

6

the movant is entitled to judgment as a matter of law. *Id.* We also review the

mootness of an appeal *de novo*. *Tanner Adver. Grp., L.L.C. v. Fayette Cnty., Ga.*,

451 F.3d 777, 784 (11th Cir. 2006). Second, we review for abuse of discretion an

award of attorney's fees and costs. *Byars v. Coca-Cola Co.*, 517 F.3d 1256, 1263

(11th Cir. 2008).

## III. DISCUSSION

Elem and Link contest the summary judgment in favor of AirTran, the award

of fees and costs, and the issuance of the Rule 70 order to enforce the judgment,

but their arguments fail. We discuss each order of the district court in turn.

### A. The District Court Correctly Granted Summary Judgment in Favor of AirTran.

We divide this section in two parts. We first discuss Elem and Link's

challenge to the summary judgment in favor of AirTran on the ground that AirTran

failed to seek equitable relief. We second discuss Elem and Link's attempts to

avoid liability based on four technicalities, none of which justify the breach of their

fiduciary duty.

#### 1. AirTran seeks appropriate equitable redress.

The Act permits AirTran to file a civil action "to obtain . . . appropriate

equitable relief . . . to redress" the misdeeds of Elem, Link, and Link & Smith. 29

U.S.C. § 1132(a)(3) (B). "[A]ppropriate equitable relief" includes only "those

categories of relief that were *typically* available in equity," *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 210, 122 S. Ct. 708, 712 (2002). Elem and Link argue that AirTran cannot recover Elem's medical costs because AirTran seeks money damages, a legal remedy, but AirTran contends that the plan created an equitable lien by agreement over the settlement funds. AirTran argues that it seeks to recover "specifically identifiable funds" in "the possession and control" of Elem and Link, that the plan created an equitable lien by agreement, and that its claim, therefore, falls within "appropriate equitable relief" allowed under the Act. *Sereboff*, 547 U.S. at 362–63, 126 S. Ct. at 1874 (internal quotation marks omitted).

This case sounds in equity. When AirTran filed suit against Elem and Link, it did so to enforce the equitable lien by agreement created by the plan. In "the days of the divided bench," this suit would have been equitable in nature. *See id.* at 363–65, 126 S. Ct. at 1874–76. Like the plan in *Sereboff*, the unambiguous terms of the AirTran plan created an equitable lien against any settlement funds that Elem received as a result of her accident. As soon as AIG gave Elem the settlement funds, AirTran "could follow it into the hands of [Elem and Link]." *Barnes v. Alexander*, 232 U.S. 117, 123, 34 S. Ct. 276, 278 (1914).

We must also ensure that the nature of the remedy AirTran seeks is equitable. *Compare Sereboff*, 547 U.S. at 361–63, 126 S. Ct. at 1873–74, *with Knudson*, 534 U.S. at 212–14, 122 S. Ct. at 714–15. Elem and Link are correct that the remedy of money damages is quintessentially a remedy at law. For that reason, a plan may not file suit against a beneficiary for reimbursement and seek recovery from "assets generally" of that beneficiary, because that suit would seek legal, not equitable, restitution. *Sereboff*, 547 U.S. at 363, 126 S. Ct. at 1874 (distinguishing *Knudson*). But when a plan seeks "specifically identifiable funds" in "the possession and control" of a beneficiary, such restitution of the funds is equitable in nature. *Id.* at 362–63, 126 S. Ct. at 1874 (internal quotation marks omitted).

AirTran seeks an equitable remedy. AirTran filed suit to enforce its equitable lien over "specifically identifiable funds" that Elem had in her "possession." *See Sereboff*, 547 U.S. at 362–63, 126 S. Ct. at 1874 (internal quotation marks omitted). According to the plain terms of the plan, the settlement that AIG paid to Elem constitutes the specifically identifiable funds over which AirTran had a lien. Elem and Link attempt to liken those settlement funds to the funds in *Knudson*, but, unlike the beneficiary in *Knudson*, Elem possessed the funds. *Id.* (distinguishing *Knudson* on the ground that the beneficiary never possessed the settlement fund); *see also Thurber v. Aetna Life Ins. Co.*, 712 F.3d

654, 664 (2d Cir. 2013) ("[A]ll that matters is that the beneficiary did, at some point, have possession and control of the specific portion of the particular fund sought by the insurer."). Once she possessed those funds, the equitable lien by agreement attached to them, making them "specifically identifiable." *Sereboff*, 547 U.S. at 362–63, 126 S. Ct. at 1874.

We disagree with our dissenting colleague, who adopts the position of the Ninth Circuit and concludes that AirTran cannot collect what it is owed because it has not traced the settlement funds after Elem divided them with her attorney. (Dissenting Op. at 30–33). *See Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1095 (9th Cir. 2012) ("Nothing in *Sereboff* suggests that a fiduciary can enforce an equitable lien against a beneficiary's *general assets* when specifically identified funds are no longer in a beneficiary's possession."). It matters not whether the settlement funds have since been disbursed or commingled with other funds. In *Sereboff*, the Supreme Court made clear that AirTran need not trace the settlement fund back to AirTran to enforce its equitable lien by agreement. *Id.* at 364–65, 126 S. Ct. at 1875–76. As soon as the settlement fund was identified, the plan imposed an equitable lien over that fund even though it was in the hands of the beneficiaries. *Id.* at 363–64, 126 S. Ct. at 1875. And in the wake of *Sereboff*, our sister circuits have concluded that "[p]roperty to which the

10

lien attached may be converted into other property without affecting the efficacy of the lien." *Funk v. CIGNA Grp. Ins.*, 648 F.3d 182, 194 (3d Cir. 2011); *see Cent. States, Se. & Sw. Areas Health & Welfare Fund v. Lewis*, 745 F.3d 283, 285 (7th Cir. 2014) ("The defendants argued . . . that because the settlement funds have been dissipated, this really is a suit for damages . . . . But the defendants are wrong."); *Thurber*, 712 F.3d at 663–64 ("[T]he beneficiary's literal segregation of funds is irrelevant when the terms of the . . . plan put the beneficiary on notice that she would be required to reimburse the insurer for an amount equal to what she might get from third-party sources." (alterations and internal quotation marks omitted)); *Cusson v. Liberty Life Assurance Co. of Boston*, 592 F.3d 215, 231 (1st Cir. 2010); *Longaberger Co. v. Kolt*, 586 F.3d 459, 466–67 (6th Cir. 2009); *see also Popowski v. Parrott*, 461 F.3d 1367, 1374 n.8 (11th Cir. 2006) ("[T]he fact that the third-party recovery triggering the [p]lan's reimbursement provision was comingled, even absent tracing, would not have disqualified an equitable lien had that equitable lien been *by agreement* . . . ."). We join those circuit courts and conclude that, even though Elem willfully refused to abide by the terms of the AirTran plan, her dereliction as a constructive trustee could not destroy the lien that attached *before* Elem divided the funds with her attorney. *See Barnes*, 232 U.S. at 122, 34 S. Ct. at 278 (explaining that the lien often attaches before the

11

specific funds exist). Elem and Link argue that AirTran may take only the remaining $4,500 of settlement funds left in the escrow account, but they misunderstand that the plan imposed a lien for the entire $131,704.28 of medical benefits paid, which attached when Elem obtained the settlement funds. Contrary to Elem and Link's argument, these "specifically identifiable funds" did not disappear when they divided the money.

By the terms of the plan, AirTran paid for Elem's medical care and, as a result, could enforce it the moment Elem possessed the settlement checks from AIG. Even though Elem and Link distributed the funds, the *res* remained the same: the amount of the medical benefits paid to Elem. *See Barnes*, 232 U.S. at 122, 34 S. Ct. at 278. Elem and Link cannot defeat the first priority lien of AirTran, and Elem cannot abandon her duties as trustee under the constructive trust by commingling the *res* with other funds. *See Gutta v. Standard Select Trust Ins. Plans*, 530 F.3d 614, 621 (7th Cir. 2008) ("[The insurer] may bring its counterclaim [for reimbursement] even if the benefits it paid Gutta are not specifically traceable to Gutta's current assets because of commingling or dissipation."). Their dishonesty and manipulation of the settlement funds cannot destroy the lien of AirTran over the "specifically identifiable" monies.

12

2. Elem and Link's remaining arguments about the summary judgment are meritless.

Elem and Link raise four additional arguments, none of which we find persuasive. First, Link and Link & Smith argue that AirTran cannot recover from them as third-party attorneys. Second, Elem and Link argue that, when AIG funded the $475,000 portion of the settlement, AIG no longer qualified as a "responsible party" under the plan. Third, they argue that AirTran cannot force Elem to reimburse it because AirTran never disclosed to her the plan terms. Fourth, Elem seeks to avoid liability by arguing that, because the plan administrator provided healthcare services, AirTran cannot sue to enforce its right to reimbursement. We address each of these arguments in turn.

Link and Link & Smith argue that they are not proper defendants because AirTran cannot seek reimbursement from a third-party attorney, but that argument fails. A plan may recover from a nonfiduciary party in interest, even if that party has not violated a duty expressly imposed by the Act. *Harris Trust & Sav. Bank v. Saloman Smith Barney, Inc.*, 530 U.S. 238, 245, 120 S. Ct. 2180, 2186–87 (2000). Because Elem breached her fiduciary duty as trustee and transferred the trust property to Link and Link & Smith, the attorneys took the property subject to the trust, unless they purchased the property for value and without notice of the fiduciary's breach of duty. *Id.* at 250, 120 S. Ct. at 2189. Even if Link and Link &

13

Smith were not the original wrongdoers, they are not insulated from liability for restitution. *Id.* at 251, 120 S. Ct. at 2189; *see also Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348, 357–58 (5th Cir. 2003), *abrogated on other grounds*, *ACS Recovery Serv., Inc. v. Griffin*, 723 F.3d 518 (5th Cir. 2013) (en banc). And Link and Link & Smith are hardly innocent parties. Link and his firm tried to hide the full amount of the settlement agreement from AirTran. Link represented that the $25,000 would take care of any liens on the settlement asserted by AirTran, but paid himself and his firm $200,815.92. Even if they had not known of the first priority lien of AirTran, they could not defeat the lien, but the record makes clear that the plan administrator had repeatedly notified Link and Link & Smith that AirTran had an equitable lien and intended to enforce it.

Link and his firm knew that they took fees and costs subject to the lien held by AirTran, and they cannot now avoid liability by asserting that they did not agree to the terms of the plan. The lien arose before they entered into a contingency fee arrangement with Elem, and Elem agreed to the terms of the plan long ago. She agreed that "[t]he Plan is not required to participate in or pay court costs or attorney fees to any attorney hired by [Elem] to pursue [Elem]'s damage claim." These obligations, which "precluded [Elem] from contracting away to the law firm

14

that which [she] did not own [herself], namely, the right to all or any portion of the [sum] that rightfully belonged to the Plan," predated her attorney-client relationship with Link and his firm. *Bombardier*, 354 F.3d at 357. That Link and his firm disregarded the first priority lien of AirTran and commingled the settlement funds does not defeat the claim for equitable relief by AirTran because, "under *Sereboff,* [AirTran] was free to follow a portion of the settlement funds into [Link and Link & Smith's] hands." *Longaberger Co.*, 586 F.3d at 469.

Elem and Link argue too that Elem could not have wrongfully transferred the settlement funds because Elem never had "possession" of those funds. They explain that AIG transferred the funds to Link and his firm. They argue that, because Elem never possessed the funds, her duty to reimburse AirTran was never triggered.

Nonsense. Even if AIG wrote and delivered the checks to Link and his firm, Elem "had at least constructive possession and control of the fund[s] to facilitate the settlement." *Griffin*, 723 F.3d at 529 ("Griffin's attempt to divorce himself from the origin of the fund and its disposition is no more persuasive than if he had directed the money to a close relative. . . . [H]e could not give away that which he did not possess."). And here, Elem likely had "actual possession" because her attorney, as her agent, received and deposited the checks.

15

Elem and Link also argue that AirTran cannot seek reimbursement because AIG is not a "responsible party" under the terms of the plan. They argue that, when AIG paid the $475,000 check, AIG no longer qualified as a "responsible party" for the purposes of reimbursement because AIG was no longer providing "liability coverage" for Rizo, but this argument contravenes the plain terms of the plan.

The terms of the plan entitle AirTran to reimbursement from "any payment" from "any Responsible Party as a result of an injury, illness, or condition." The plan defines "Responsible Party" as "any party actually, possibly, or potentially responsible for making any payment to a Covered Person due to a Covered Person's injury, illness or condition[, which] includes the liability insurer of such party or any insurance coverage." Because AIG settled the lawsuit for $500,000, it meets the definition of a "responsible party." It matters not at all that Rizo's policy limits were only $25,000 because the terms of the plan allow AirTran to recover "any payment" to Elem "due to" her injury. AirTran now may seek its "specifically identifiable" amount from the $500,000 for medical expenses paid on behalf of Elem.

Elem and Link also attempt to evade liability by arguing that AirTran cannot force Elem to reimburse AirTran because she never saw the plan documents, but Elem accepted the benefits and is bound by the terms of the plan unless AirTran

16

prejudiced Elem by its failure to disclose them. Our Court has said that "the quantity of an employer's procedural violations," such as failure to abide by disclosure requirements, "may work a substantive harm." *Harris v. Pullman Standard, Inc.*, 809 F.2d 1495, 1499 (11th Cir. 1987). But an employee must establish that she was prejudiced by an infraction committed by the plan. *See Hein v. TechAmerica Grp., Inc.*, 17 F.3d 1278, 1280–81 (10th Cir. 1994); *see Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743 (7th Cir. 1991) (requiring bad faith, active concealment, or inducement to rely on a faulty plan summary by an administrator before a court will award recovery for procedural violations).

Elem has not alleged that AirTran committed a multitude of procedural violations or that she was prejudiced by any nondisclosure. Nor can she. The plan administrator repeatedly sent letters expressing its intent to pursue reimbursement. And Elem allowed AirTran to pay over $130,000 of her medical bills. Elem knew of the lien before disbursing the funds to herself and to her attorney, and she cannot avoid liability on a technicality. *See Weinreb v. Hosp. for Joint Diseases Orthopaedic Inst.*, 404 F.3d 167, 171–72 (2d Cir. 2005) ("Where a plan administrator fails to fulfill its statutory duty . . . , but where the evidence shows that the claimant had actual knowledge of the requirement at issue, the error is necessarily harmless.").

17

Finally, Elem and Link argue that AirTran lacks standing to seek reimbursement of Elem's medical costs that the plan administrator paid, but they misunderstand the nature of the self-funded employee benefit plan offered by AirTran. Under the terms of the plan, AirTran provided various benefit options to its employees and contracted with the plan administrator to provide various services, including network access, subrogation, and patient management services. In the district court, Elem relied on language in the Benefits Enrollment Guide, which refers to healthcare services provided by the plan administrator, but the provision of those administrative services does not give the plan administrator the right to seek reimbursement from Elem. Instead, AirTran still paid for all expenses incurred by its participants, including Elem. We reject Elem and Link's argument that AirTran cannot now recover its costs because it contracted with the plan administrator.

### B. The District Court Did Not Abuse Its Discretion by Awarding Attorney's Fees and Costs to AirTran.

A district court, "in its discretion," may award attorney's fees to a party, 29 U.S.C. § 1132(g)(1), if that party achieved "some degree of success on the merits," *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255, 130 S. Ct. 2149, 2158 (2010). We require district courts to consider five factors when deciding whether to award fees to a prevailing party:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of attorney's fees; (3) whether an award of attorney's fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorney's fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; [and] (5) the relative merits of the parties' positions.

*Freeman v. Continental Ins. Co.*, 996 F.2d 1116, 1119 (11th Cir. 1993). We have explained that "[n]o one of these factors is necessarily decisive, . . . but together they are the nuclei of concerns that a court should address." *Iron Workers Local No. 272 v. Bowen*, 624 F.2d 1255, 1266 (5th Cir. 1980).

Elem and Link argue that the district court unjustly awarded AirTran attorney's fees, but the five *Freeman* factors support the award. First, we rarely see such a textbook example of "bad faith." Link intentionally attempted to deceive the plan administrator when he sent the letter stating that $25,000 represented the entire settlement amount. And he coerced AIG to draft two separate releases to effectuate his deception. Fortunately for AirTran, his scheme came crashing down when he sent a copy of the $475,000 check to the plan administrator. His actions no doubt evince bad faith. Second, Link and Link & Smith have already satisfied the award, although conditionally. Third, an award of attorney's fees in this circumstance would help deter others from cheating their employee benefit plan. Fourth, the award protects plan assets, which benefit all plan participants. And

19

fifth, the defense mounted by AirTran was highly meritorious. The district court

did not abuse its discretion when it awarded attorney's fees to AirTran.

### C. The Payment of the Award of Fees and Costs Moots Any Argument About the Entry of the Rule 70 Order by the District Court.

Elem and Link argue that the district court misinterpreted Federal Rule of

Civil Procedure 70 when it ordered them to pay the full amount of the judgment

and fees and costs. Rule 70 provides, "If a judgment requires a party to convey

land, to deliver a deed or other document, or to perform any other specific act and

the party fails to comply within the time specified, the court may order the act to be

done—at the disobedient party's expense—by another person appointed by the

court." Rule 70 "gives the district court a discrete and limited power to deal with

parties who thwart final judgments by refusing to comply with orders to perform

specific acts." *Analytical Eng'g, Inc. v. Baldwin Filters, Inc.*, 425 F.3d 443, 449

(7th Cir. 2005). Elem and Link contend that the district court erroneously

converted a final money judgment at law into an injunction and that the judgment

was enforceable only through a writ of execution.

This issue is no longer justiciable because the appeal of the order is now

moot. Instead of posting a supersedeas bond, Link and his firm paid the full

amount due to AirTran to avoid being held in contempt. Even if we agreed that the

district court erred when it issued that order, we could not grant any meaningful

relief because the defendants have already complied with it. *See Bradford Marine, Inc. v. M/V Sea Falcon*, 64 F.3d 585, 587 n.1 (11th Cir. 1995); *Fidelcor Mortg. Corp. v. Ins. Co. of N. Am.*, 820 F.2d 367, 370 (11th Cir. 1987) ("When it executed the satisfaction of the judgment, it included no reservation allowing it to proceed with an appeal on some issues; it satisfied the judgment in toto. Therefore, there is nothing left from which it may appeal."). No case or controversy about the merits of the Rule 70 order remains after the payment. *See RES-GA Cobblestone, LLC v. Blake Constr. & Dev., LLC*, 718 F.3d 1308, 1314 (11th Cir. 2013) ("Where no legally cognizable interest is at stake between the parties, a case becomes moot. . . . This is so no matter how vehemently the parties continue to dispute the issues that animated the litigation." (internal quotation marks and citation omitted)).

We are befuddled by our dissenting colleague's contrary conclusion. (Dissenting Op. at 36–39). At oral argument, when we asked counsel for Elem, Link, and Link & Smith what injury they now suffered as a result of the Rule 70 order even though they had paid the judgment, he answered, "Any injury now, perhaps not." We reiterate that because Link and Link & Smith have complied with the Rule 70 order by paying the judgment, we cannot afford them any meaningful relief even if that order was in error.

21

## IV. CONCLUSION

We **AFFIRM** the summary judgment and award of attorney's fees and costs

in favor of AirTran and **DISMISS** as moot the appeal of the order under Rule 70.

MARTIN, Circuit Judge, dissenting:

AirTran Airways, Inc. (AirTran) says that its suit seeks equitable relief, but it fails to make a critical showing for purposes of equity: that the defendants remain in possession of the disputed property.  For the reasons that follow, I have come to understand that AirTran's suit seeks a legal remedy which is not permitted under the statute it relies on.  Based on this understanding, I would reverse the District Court's grant of summary judgment in favor of AirTran, its order awarding attorney's fees and costs, and its later Rule 70 order enforcing the judgment.

## I.    THE DISTRICT COURT IMPROPERLY GRANTED SUMMARY JUDGMENT BY CLASSIFYING AIRTRAN'S CLAIMS AS EQUITABLE.

At issue is whether AirTran's suit against Brenda Elem, her attorney Mark Link, and his law firm Link & Smith, P.C. (Link & Smith) (collectively the defendants) to recover settlement funds subject to an equitable lien by agreement is permitted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1132(a)(3)(B).  This statute gives courts the power to grant "other appropriate equitable relief" only when enforcing a covered insurance plan.  Specifically, a plan fiduciary may bring a civil action under ERISA "to obtain other appropriate equitable relief . . . to enforce . . . the terms of the plan."  29 U.S.C. § 1132(a)(3)(B)(ii).  The Supreme Court has construed this section to

23

authorize only "those categories of relief that were <u>typically</u> available in equity."

<u>Mertens v. Hewitt Assocs.</u>, 508 U.S. 248, 256, 113 S. Ct. 2063, 2069 (1993).

Thus, the statute offers no relief for legal claims.  Whether a remedy is "legal or

equitable depends on the basis for [the plaintiff's] claim and the nature of the

underlying remedies sought."  <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>,

534 U.S. 204, 213, 122 S. Ct. 708, 714 (2002) (alteration in original) (internal

quotation marks omitted).

     I certainly recognize that AirTran's claim here is one arising in equity.  The

clear terms of the insurance plan created an equitable lien by agreement over the

money Ms. Elem got as a result of her third party suit from the moment she had

actual or constructive possession of that money.  However, on the facts before us,

the only remedy available to AirTran is legal, not equitable, in nature.  Money

damages are traditionally a remedy at law, but can be equitable if the plaintiff

seeks: (1) "specifically identifiable funds" in (2) the defendant's "possession and

control."  <u>Sereboff v. Mid Atl. Med. Servs., Inc.</u>, 547 U.S. 356, 362–63, 126 S. Ct.

1869, 1874 (2006) (internal quotation marks omitted).  AirTran properly identified

specific funds, but failed to establish that the identifiable funds are "in the

possession and control" of the defendants.  The remedy AirTran seeks is therefore

a legal one and is not permitted under 29 U.S.C. § 1132(a)(3)(B).

## A. A MONEY DAMAGE AWARD IS ONLY EQUITABLE IF THE DEFENDANT REMAINS IN POSSESSION.

Supreme Court precedent makes clear that a plaintiff proceeding in equity to recover funds from a defendant must, at a minimum, show that those funds are presently in the defendant's possession.  In <u>Walker v. Brown</u>, 165 U.S. 654, 17 S. Ct. 453 (1897), the Supreme Court was asked to decide whether an equitable lien by agreement remained attached to certain Memphis city bonds in the hands of the widow of a businessman who pledged the bonds to plaintiff J. H. Walker & Co. (Walker).  That businessman, Mr. Brown, had actually pledged the bonds to Walker for the benefit of a third party.  As that third party got into financial difficulties, Mr. Brown paid its creditors the value of the bonds, retook possession of the bonds, and then gifted them to his wife before he passed away.  The Supreme Court held that the lien by agreement was not extinguished when Mr. Brown bought them back, and that the "equitable lien will be enforced by a court of equity against the bonds <u>in the hands of [Mrs.] Brown or against third persons who are volunteers or have notice</u>."  165 U.S. at 664, 17 S. Ct. at 457 (emphasis added).  The Supreme Court's discussion of available equitable relief turned on the current location and possession of the bonds.  <u>See also</u> <u>Ketchum v. St. Louis</u>, 101 U.S. 306, 318 (1879) ("With that [equitable] lien the property itself was chargeable by whomsoever it or the funds accruing therefrom are or may be held.").

25

More recent cases also support the expectation that a defendant must still be in possession of the property subject to the lien to allow equitable recovery under 29 U.S.C. § 1132(a)(3)(B).  The Supreme Court denied reimbursement in <u>Knudson</u> because the insurance company was not seeking to recover "particular funds or property in the defendant's possession."  534 U.S. at 213, 122 S. Ct. at 714.  The company sued Ms. Knudson, the beneficiary, instead of the trustee in charge of the Special Needs Trust where the money was held pursuant to California law. Because Ms. Knudson did not have the funds in her possession, the Court observed that the plaintiff's claim was "not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to <u>some</u> funds for benefits that they conferred."  <u>Id.</u> at 214, 122 S. Ct. at 715.  The Court held "where 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant].'"  <u>Id.</u> at 213, 122 S. Ct. at 714 (alteration in original) (quoting Restatement of Restitution § 215, cmt. a, at 867); <u>see also</u> Restatement of Restitution § 215 cmt. b ("A person whose property is wrongfully taken by another is not entitled to priority over other creditors unless he proves that the wrongdoer not only once had the property or its proceeds, but

26

still has the property or its proceeds or property in which the claimant's property or its proceeds have been mingled indistinguishably.").

In Sereboff , the Supreme Court noted that the "impediment to characterizing the relief in Knudson as equitable" was not present. Id. at 362, 126 S. Ct. at 1874. That is because, in contrast to Knudson, the plan administrator in Sereboff sought "particular funds or property in the defendant's possession," Knudson, 534 U.S. at 214, 122 S. Ct. at 708, where the identified fund was "preserved [in the Sereboffs'] investment accounts." Sereboff, 547 U.S. at 362– 63, 126 S. Ct. at 1874 (alteration in original) (quoting Mid Atl. Med. Servs., LLC v. Sereboff, 407 F.3d 212, 214 (4th Cir. 2005), aff'd sub nom. Sereboff v. Mid Atl. Med. Servs., Inc., 547 U.S. 356, 126 S. Ct. 1869 (2006)).

This Court and other Circuit Courts have followed the Supreme Court's guidance that a defendant's current possession of the funds at issue is a necessary element of an equitable claim. See, e.g., Popowski v. Parrott, 461 F.3d 1367, 1373 (11th Cir. 2006) ("Unlike in Knudson, a significant portion of the funds specified went directly into the [insureds'] bank account and, thereby, was in their possession for purposes of this case. Thus, at the time they filed their suit, [the plan fiduciaries] sought 'not to impose personal liability on [the beneficiary], but to restore to the plaintiff[s] particular funds or property in [the beneficiary's]

27

possession.'" (fourth alteration in original) (emphasis added) (quoting Knudson,

534 U.S. at 214, 122 S. Ct. at 714–15)); Treasurer, Trs. Of Drury Indus. Health

Care Plan & Tr. v. Goding, 692 F.3d 888, 896 (8th Cir. 2012) ("In equity, there

was no cause for restitution where the trustee of property wrongfully disposed of

another's property, but no longer held that property or its product.  A party who

has been wrongfully divested of its property . . . could only recover it if it proved

not only that the other party once had property legally or equitably belonging to it,

but also that he still holds the property or properties which is in whole or part its

product." (citation omitted) (internal quotation marks and alterations omitted));

Bilyeu v. Morgan Stanley Long Term Disability Plan, 683 F.3d 1083, 1095 (9th

Cir. 2012) (rejecting the argument that an equitable lien can be enforced against

general assets when the specifically identified property has been dissipated);

Loffredo v. Daimler AG, 500 F. App'x. 491, 499 (6th Cir. 2012) ("To plead claims

for equitable relief . . . the plaintiffs would have to allege either that the defendants

currently (and improperly) possess the assets dispersed from the trust or that they

retain profits generated from that property.").  In disagreeing with a case cited

favorably by the majority, the Solicitor General of the United States also concluded

that a plaintiff must establish the defendant's possession of the disputed funds to

recover under this provision.  See Brief for the United States as Amicus Curiae at

28

9, <u>Thurber v. Aetna Life Ins. Co., et al.</u>, ___ U.S. ___, 134 S. Ct. 2723 (2014) (No.

13-130), 2014 WL 1783200 at *9 ("In the government's view, the court of appeals

in this case erred in concluding that a plan fiduciary can enforce an equitable lien

regardless of whether the funds at issue have been dissipated.").

### B. AIRTRAN DID NOT ESTABLISH THAT DEFENDANTS HAVE POSSESSION OF THE SETTLEMENT FUNDS.

As soon as the settlement funds were transferred to the benefit of Ms. Elem,

AirTran "could follow [those funds] into the hands" of the defendants.  Panel Op.

at 8 (quoting <u>Barnes v. Alexander</u>, 232 U.S. 117, 123, 34 S. Ct. 276, 278 (1914)).

Once AirTran established who had the funds, its recovery against the person

holding the funds would rightfully be classified as "equitable" according to

Supreme Court and common law precedent.  Yet what AirTran is entitled to do in

equity, and what it actually did here, are very different things.

AirTran's complaint alleges "[u]pon information and belief, portion(s) of the

funds to which the Plan is entitled are in the possession of Defendant Elem,

Defendant Link and/or the Defendant Firm."  AirTran's statement of material facts

submitted in connection with its motion for summary judgment fails to offer any

support for the allegation about possession made in its complaint.  Though AirTran

had ample opportunity in discovery to inquire about the exact location of the

distributed settlement money, it did not.  Neither did AirTran ask the District Court

for a restraining order or injunction to make sure that the funds were easy to identify once the case was resolved, as had happened in other reimbursement cases.  See, e.g., Sereboff, 547 U.S. at 360, 126 S. Ct. at 1873 (noting that the Sereboffs agreed to preserve the disputed funds in an investment account until the suit was resolved); Popowski, 461 F.3d at 1370 ("[T]hey filed this suit along with a motion for a temporary restraining order and preliminary injunction to protect the settlement proceeds.").  In its argument here, AirTran says that the "settlement funds could be followed into the hands of Elem, Link, and Link & Smith, P.C.," but it does not point to the money's current location.  AirTran suggests that defendants engaged in "chicanery" by "concealing and then quickly 'spend[ing] all money received,'" but points to nothing in the record to support that proposition.

## C. SEREBOFF'S LIMITATION ON "STRICT TRACING" DOES NOT IMPACT THIS CASE.

The majority forgives AirTran's failure to show defendants' possession of the settlement funds by stating that disbursal or commingling of the settlement funds is irrelevant to whether the claim is properly characterized as equitable.  Ms. Elem, Mr. Link, and Link & Smith challenged the District Court's grant of summary judgment in part because AirTran did not establish that the funds it requested were still in the possession of any defendant.  The majority says, mistakenly I believe, that the defendants' challenge is one "on the ground that

30

AirTran failed to satisfy the strict tracing rules of equitable restitution."  Panel Op. at 2.  The majority then relies on <u>Sereboff</u> to reject this appeal.  547 U.S. at 364, 126 S. Ct. at 1875 (discussing the "strict tracing rules" that applied to equitable restitution at common law).  But I do not read <u>Sereboff</u> in the same way as the majority.

In <u>Sereboff</u>, the beneficiaries of an ERISA-covered health insurance plan received payment from the plan to cover medical expenses resulting from a car accident.  The Sereboffs later settled a lawsuit they had filed regarding the car accident, and the terms of the plan called for the money paid in settlement to go to reimburse the administrator.  The Sereboffs argued that recovery of settlement funds paid by a third party—and not directly from the plan—was not "equitable relief" under 29 U.S.C. § 1132(a)(3)(B) because "[t]he money in [the beneficiaries'] investment account cannot be traced to [the plan administrator]." Respondent Reply Brief at 9, <u>Sereboff</u>, 547 U.S. 356, 126 S. Ct. 1869 (No. 05-260), 2006 WL 717048 at *9.  The Supreme Court rejected the Sereboffs' argument because "no tracing requirement of the sort asserted by the Sereboffs applies to equitable liens by agreement or assignment."  <u>Sereboff</u>, 547 U.S. at 365, 126 S. Ct. at 1875.  In support of its position, the Court turned to "case law from the days of the divided bench"—meaning cases heard during the period when the

31

United States had two parallel courts, one of equity and one of law—which did not require the holder of an equitable lien by agreement to trace the res directly from the defendant back to the plaintiff. Id. at 363–64, 126 S. Ct. at 1874–75 (discussing Barnes, 232 U.S. at 199–23, 34 S. Ct. at 277–78).

In its discussion of strict tracing, the Supreme Court made a distinction between equitable liens sought as a matter of restitution and equitable liens by agreement. For equitable liens sought as a matter of restitution, strict tracing is required, but for equitable liens by agreement, it is not. Sereboff, 547 U.S. at 364–65, 126 S. Ct. at 1875–76. Further, the Court cabined its discussion of strict tracing to the type of tracing requirement "asserted by the Sereboffs." Id. at 365, 126 S. Ct. at 1875. As described above, the Sereboffs argued that equitable tracing required the plaintiff to trace the defendant's funds back to the plaintiff himself, and not to a third party. The Supreme Court rejected this argument, and held that equitable relief was still available where the plaintiff could not "identify an asset they originally possessed, which was improperly acquired and converted into property the defendant held." Id. (emphasis added). Later, this Court interpreted Sereboff's tracing language to eliminate only the requirement that disputed funds originate with the plaintiff. See Admin. Comm. for Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Horton, 513 F.3d 1223, 1227 n.3 (11th Cir. 2008)

32

("[T]he Sereboff Court explained that strict tracing rules need not apply for an equitable lien to properly attach to the settlement funds; that is, although the disputed funds had never actually been in the possession of the plan, the plan could seek to 'recover' property that belonged to it in good conscience under the plan agreement." (emphasis added)).

The majority relies on what I believe is a misapplication of Sereboff, accepted by some of our sister circuits, to characterize the recovery of assets no longer in the defendant's possession as equitable relief.  See, e.g., Cusson v. Liberty Life Assurance Co. of Boston, 592 F.3d 215, 231 (1st Cir. 2010) (determining that an insurer need not identify a "specific account in which the funds are kept or prove[] that they are still in [the defendant's] possession").  I do not accept this interpretation because the defendants in Sereboff were still in possession of the funds—the Sereboff parties had stipulated that the funds were securely set aside in an investment account.  See Sereboff, 547 U.S. at 360, 126 S. Ct. at 1873.  So in Sereboff the Supreme Court was never asked to decide whether a defendant's possession at the time of the suit was necessary for an action in equity.

## D. EQUITABLE RELIEF IS NOT AVAILABLE AGAINST DEFENDANTS WHO DO NOT HAVE POSSESSION OF THE DISPUTED PROPERTY.

If the settlement had instead been issued to Ms. Elem in the form of a luxury automobile, AirTran could exercise its equitable lien only by locating the automobile or the proceeds of the sale of the automobile and suing the person who had possession.  It would make no sense to sue in equity to recover a car from someone who does not have it.  And, the result is the same when a plaintiff brings a claim for "other equitable relief" without establishing who is in possession.  At core, a plaintiff's ability to seek equitable relief over a res cannot be separated from the ongoing existence and location of that res or its proceeds.  More to the point, we, as a court sitting in equity, cannot reverse engineer what happened to the plaintiff's property by assuming that one or more of the named defendants now has it.  Yet, that is what the majority does here.

The District Court's grant of summary judgment entitled AirTran to recover the $131,704.28 it paid for Ms. Elem's medical expenses.  The District Court later clarified that its "[j]udgment requires reimbursement of AirTran by all Defendants . . . because all three possess settlement funds that belong 'in good conscience' to the Plan.'"  The majority opinion repeats this idea that the funds AirTran seeks to recover are "in 'the possession and control' of Elem and Link."  Panel Op. at 8.

34

But nothing in the record supports either conclusion.  To the contrary, only Ms. Elem and Link & Smith received distributions from the settlement amount, and AirTran made no assertions about whether the money remained in their possession when it filed its motion for summary judgment.  The record before us simply tells us nothing about where the money is.  It could be disbursed, it could be commingled, or it could be tucked under Ms. Elem's mattress.  By the District Court's order, Mr. Link is liable in equity for a res that he does not possess.  Whatever retribution is appropriate for Mr. Link's "sin[s]," Panel Op. at 2, it cannot lie in equity.  If Ms. Elem and Link & Smith no longer have the funds, they continue to be subject to legal claims, but the equitable claim has dissipated.  AirTran's claims simply fall outside the relief permitted by 29 U.S.C. § 1132(a)(3)(B).

## II.    THE DISTRICT COURT IMPROPERLY GRANTED ATTORNEY'S FEES AND COSTS.

The defendants also challenge the District Court's grant of attorney's fees and costs.  Under 29 U.S.C. § 1132(g), attorney's fees may be awarded at the Court's discretion to a party who achieves "some success on the merits."  Hardt v. Reliance Standard Life Ins. Co., 560 U.S. 242, 255, 130 S. Ct. 2149, 2158 (2010).  Because I view summary judgment as having been improperly granted in favor of AirTran, the District Court's related award of attorney's fees and costs should also

be vacated.  See Ogden v. Blue Bell Creameries U.S.A., Inc., 348 F.3d 1284, 1288

(11th Cir. 2003) (vacating award of attorney's fees after holding that the District

Court improperly awarded equitable relief under ERISA).

### III.    DEFENDANTS' APPEAL OF THE DISTRICT COURT'S RULE 70 ORDER IS NOT MOOT AND THE RULE 70 ORDER WAS GRANTED TO ENFORCE AN INCORRECT JUDGMENT.

Finally, I turn to the defendants' appeal of the District Court's Rule 70 order

enforcing judgment.  The majority opinion dismisses the appeal as moot because

defendants paid the required amount to AirTran, eliminating any "case or

controversy about the merits of the Rule 70 order."  Panel Op. at 21.  I disagree

with this holding on both factual and legal bases.

The defendants' payment to AirTran was conditioned in part on the outcome

of the Rule 70 order appeal.  The majority opinion highlights a purported

stipulation by both parties at oral argument that the payments were subject to "the

disposition of the appeal of the summary judgment and the award of attorney's fees

and costs."  Id. at 6.  I heard no such stipulation at oral argument.  AirTran's

counsel admitted that the payment "was subjectively conditioned on repayment if

there was a final ruling in favor of [defendants]," Oral Arg. Recording at 13:36

(Feb. 28, 2014), while counsel for defendants stated that the money was "turned

over to other side to hold in trust" and that if "we win, we get it [back]," id. at

36

00:52, 01:09.  At no point did the parties mention that conditional repayment was tied <u>only</u> to the appeal challenging summary judgment and award of attorney's fees and costs.  This matters because defendants had two separate appeals before us: one challenging the summary judgment grant and award of attorney's fees and costs, Case No. 13-11738-BB, and the other challenging the Rule 70 order, Case No. 13-14912-BB.  Everything I see indicates to me that defendants' payment was conditioned on the outcome of both appeals.  For example, in their response to AirTran's motion for contempt, Mr. Link and Link & Smith state that they "are paying the amounts claimed under protest and threat of civil and/or criminal contempt while the appeal of both Orders are pending in the 11th Circuit."  Without explicit documentation or statements to the contrary, I see no basis for putting limitations on the defendants' conditional payment in our evaluation of mootness.

I do not read our prior case law to comport with the majority's analysis.  While "payment of a judgment and an acknowledgement of satisfaction will moot an appeal from the judgment," <u>RES-GA Cobblestone, LLC v. Blake Const. and Dev., LLC</u> (<u>Cobblestone</u>), 718 F.3d 1308, 1315 (11th Cir. 2013), it is also true that "what matters is whether the parties' actions objectively manifest an intent to abandon the issues on appeal." <u>Id.</u> at 1315.  In <u>Cobblestone</u>, we observed that the

37

appellant "never purported to reserve the right to continue to pursue [the] appeal," did not intend to "claw back the costs and fees he paid," and signed a consent agreement settling the suit to determine that the appeal was mooted. Id. at 1315–16; see also Fidelcor Mortg. Corp. v. Ins. Co. of N. Am., 820 F.2d 367, 370 (11th Cir. 1987) (mooting appeal where appellant made "no reservation allowing [him] to proceed with an appeal"); cf. Alvarez-Perez v. Sanford-Orlando Kennel Club, Inc., 518 F.3d 1302, 1305–08 (11th Cir. 2008) (declining to dismiss an appeal as moot where the parties "acted in all respects as though the appeal and cross-appeal were alive and that they were awaiting a decision" and "continued to litigate the case in this Court as though nothing had changed"); Ass'n for Disabled Ams., Inc. v. Integra Resort Mgmt., Inc., 387 F.3d 1241, 1243 (11th Cir. 2004) (holding that an appeal was not moot where appellants "specifically reserved their right to appeal" and there was no "evidence of some intent to end the litigation").  Like the appellants in Alvarez-Perez, here the defendants' "actions speak loudly enough to drown out" any indication that they regarded the conditional payment to terminate either of their appeals.  518 F.3d at 1307.  Both parties briefed the Rule 70 order appeal after the payment was made to AirTran, and neither brief claimed mootness. The majority offers no evidence that the parties "objectively manifest[ed] an intent to abandon the issues" as is necessary by this Court's precedent.

The defendants' counsel made a statement at oral argument, only part of which is quoted by the majority to oppose the position I have taken here.  See Panel Op. at 21.  Though the attorney for Ms. Elem, Mr. Link and his law firm did say there was "perhaps not" a current injury resulting from that order, he went on to explain "but it could cause injury in the future such as having to come back up here again and fight that issue."  Oral Arg. Recording at 02:58–03:06 (Feb. 28, 2014).  Even accepting that counsel did not fully explain his clients' ongoing injury at that moment in the oral argument, the fact remains that, much like a supersedeas bond, defendants have an ongoing injury in the form of their conditional payment suspended in escrow.

The Rule 70 order appeal is not mooted by defendants' conditional payment made under threat of contempt.  The District Court's grant of summary judgment improperly awarded non-equitable relief to AirTran in violation of 29 U.S.C. § 1132(a)(3)(B), thus an order enforcing that judgment cannot stand.  Both the grant of summary judgment and the Rule 70 order should be vacated.

For these reasons I respectfully dissent.